IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MORIS LACA, individually and as parent and next friend of R. LACA and A. LACA, minor children; and SUELA TAFANI, individually and as parent and next friend of R. LACA and A. LACA, minor children,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA *ex rel.* DEPARTMENT OF VETERANS AFFAIRS; and SCOTT W. JONES, Special Agent for the Department of Veteran Affairs,<br><br>Defendants. | Case No. 22-cv-00366-SEH-SH |

## OPINION AND ORDER

Before the Court is Plaintiffs' motion to remove the confidentiality designation from documents produced by Defendant United States of America *ex rel.* Department of Veterans Affairs (the "Government"). The documents involved are a narrative report with 48 exhibits that contain the results of an internal investigation by the Department of Veterans Affairs ("VA") Office of Inspector General ("OIG"). The narrative report, itself, is 63 pages, while the exhibits run approximately 797 pages. The Court will generally refer to these combined documents as the "OIG Report."

Balancing pertinent factors, the Court finds that Defendants failed to show good cause for the protection of the OIG Report, as a whole, at least where the report is used for purposes of conducting this litigation. The Court finds good cause for restricting the ability to use the report outside of the litigation. The Court further finds that the report contains certain individual pieces of ancillary, personal information requiring its

redaction before being publicly disclosed as part of this litigation. The Court, therefore, will order the Government to redact such information from the OIG Report, after which the redacted report may be used freely in this case.

## Background

Plaintiffs' claims relate to the investigation, failed prosecution, and termination of Moris Laca ("Laca") in 2020. According to the Complaint, in early 2020, Defendant Scott Jones ("Jones"), a special agent with the VA, accused Laca of illegally accessing and stealing controlled substances from returned mail at the VA facility where Laca worked as a doctor. (ECF No. 2 ¶ 14.[1]) Laca claims that, as a result, he was suspended from his position as a physician and coerced into surrendering his Drug Enforcement Administration license. (*Id.* ¶¶ 15-16.)

In June 2020, another employee—pharmacy technician Stephen Duncan—allegedly confessed he had been diverting narcotics for three years and had stolen more than 8,000 hydrocodone, oxycodone, Adderall, and Tramadol pills. (*Id.* ¶ 18.) Despite this, in July 2020, Jones allegedly appeared before the grand jury and falsely stated that Laca admitted to stealing Tramadol from a package and that the paperwork from that package had been found in the mail room trash can. (*Id.* ¶ 19.) Jones also allegedly withheld from the grand jury that Laca denied stealing Tramadol and tested negative for drug use. (*Id.*)

On July 7, 2020, Laca was then indicted by the grand jury and charged with two felonies in this district—mail theft and diversion of controlled substances. (Case No. 20-cr-86-JFH (the "Criminal Case") ECF No. 2.) During discovery in the Criminal Case, in

---

[1] Unless otherwise stated, all references to ECF are for filings in the above-captioned action.

August 2020, Laca allegedly received documentation stating the drugs he stole were Tramadol pills in a package addressed to patient D.P.C. (ECF No. 2 ¶ 22.) However, in September, when the parties visited the VA mail room, they allegedly discovered the envelope addressed to D.P.C. was unopened, and no drugs had been stolen from him. (*Id.* ¶ 23.) On September 29, 2020, Laca's counsel filed a motion to dismiss the indictment based, in part, on Jones's false testimony. (Crim. Case ECF No. 40.) That same day, the U.S. Attorney asked the Court to "dismiss the Indictment . . . with prejudice," stating, "[b]ased on additional investigation, the government has determined the case lacks prosecutorial merit." (Crim. Case ECF No. 41.) Laca's criminal defense counsel withdrew their motion; District Judge John F. Heil, III, granted the U.S. Attorney's motion; and the criminal charges were dismissed with prejudice on September 30, 2020—one day before the final pretrial conference. (Crim. Case ECF Nos. 25, 42-44.)

Plaintiffs filed the current lawsuit in 2022, naming the Government and Jones as defendants. (ECF No. 2.) Laca asserts claims for negligence, false imprisonment, false arrest, malicious prosecution, abuse of process, intentional infliction of emotional distress, and violation of his civil rights. (*Id.* ¶¶ 39-64.) Laca's wife and children have asserted claims for loss of consortium, and his wife has additionally asserted a claim for intentional infliction of emotional distress. (*Id.* ¶ 65-78.) The Government filed an answer on March 10, 2023 (ECF No. 22), and discovery between Plaintiffs and the Government has been ongoing since at least May 2023 (*see* ECF No. 43-1). After Plaintiffs sought fees related to a prior discovery motion, the Government filed a post-answer motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6). (ECF No. 78.) Two months later, after Plaintiffs filed the current motion, the Government filed a motion to stay discovery. (ECF No. 104.) These motions remain pending before the district judge.

The current dispute relates to the confidential treatment of documents produced by the Government when it was participating without objection in merits discovery. The Court finds the Government's newly realized arguments have no effect on the current motion, which relates to the appropriateness of the Government's prior actions.[2]

### The Current Dispute

During the pendency of a prior discovery dispute, the Court entered multiple orders in an effort to resolve disputes and facilitate production by the Government.[3] On October 31, 2023, the Court entered an order rejecting various arguments made by the Government and directing the parties to take action. (ECF No. 49.) Among other things, the Court rejected the Government's assertion that it was somehow excused from responding to written discovery on the ground that it believed a protective order was necessary when it had not sought a protective order from the Court. (*Id*. at 1-2.[4]) The Court also rejected the Government's assertion that it was excused from responding to written discovery on the ground that an order was needed under the Privacy Act, 5 U.S.C. § 552a(b)(11), when the Government had never sought such an order. (*Id*. at 2-3 & n.2 (also rejecting any argument that the Privacy Act creates a privilege against discovery).) The Court then directed the parties to confer as to the appropriate form of protective order (*id*. at 2) and ordered the Government to file "a motion with the Court for entry of an

---

[2] Defendant Jones did not appear in this action until November 2, 2023. (ECF No. 50.) Jones immediately filed a motion to dismiss (ECF No. 51) and, a few weeks later, a motion to stay discovery (ECF No. 66). These motions are also pending before the district judge. Jones's arguments for immunity and stay are distinct from those belatedly asserted by the Government. As the stay has not (yet) been granted and this motion does not result in future litigation or discovery obligations, the Court finds Jones's pending motions do not militate against the undersigned deciding the current dispute.

[3] Jones took no part in the prior discovery dispute.

[4] References to page numbers refer to the ECF header.

order it believes will be sufficient to allow it to provide relevant discovery in this case without violating the Privacy Act" (*id.* at 3).

On November 7, 2023, the parties proffered an agreed order allowing for disclosure of documents under the Privacy Act (ECF No. 55 at 1 & 55-1), but the parties were unable to agree to the form of a protective order (ECF No. 55 at 3-5).  Specifically, Plaintiffs did not believe the OIG Report should be marked confidential, while the Government argued it should.  (*Id.*)  The Court entered the parties' agreed-to order for production of documents subject to the Privacy Act.  (ECF No. 62.)  The Court, however, found no need to delay entry of a protective order or decide in advance the confidentiality of the as-yet-unseen OIG Report; instead, the Court found that this district's default protective order contained an adequate methodology to allow for the initial designation of documents as confidential and the resolution of any disputes as to that designation.  (ECF No. 60.)  The Court then entered the protective order.  (ECF No. 61.)

Some time after the issuance of these orders, the Government produced the OIG Report, marking every single page as confidential under the protective order.  Plaintiffs have now filed their motion—following the procedures set forth in the protective order—to have these documents declared not confidential.  Plaintiffs specifically complain of the administrative nightmare created by treating this huge and central set of documents as confidential, which requires filing every document referencing the OIG Report under seal. (ECF No. 99 at 15-16.)  Plaintiffs further argue that the public has a right to know of the governmental malfeasance exposed by the OIG Report.  (*Id.* at 16.)

## Analysis

### I. Standard of Review

The protective order entered by the Court in this case allows a party to designate material confidential, if that party and its counsel both believe "in good faith" that the material constitutes or discloses confidential information contemplated under Fed. R. Civ. P. 26(c). (ECF No. 61 ¶ 1(b).) Another party may challenge the designation and—after attempting to resolve differences with the opposing party—may move the Court for a ruling that the material "not be so designated." (*Id.* ¶ 7.) The burden, however, remains on the designating party to establish that the material should be protected as confidential. (*Id.*)

That is, the protective order allows the parties to attempt, by agreement, to decide for themselves whether material should be treated as confidential and subject to a protective order. Once there is a dispute, however, the Court then treats the designating party as it would any other party seeking a protective order in the first instance under Rule 26.

Under that rule, the Court may, for good cause, issue an order to protect a person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). The good cause standard is "highly flexible," allowing the Court to address the relevant interests that may arise in a particular case. *Siegel v. Blue Giant Equip. Corp.*, 793 F. App'x 737, 744 (10th Cir. 2019) (unpublished).[5] The Court has broad discretion, *id.*, and the party seeking protection must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements,"

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

*S.E.C. v. Goldstone*, 301 F.R.D. 593, 645 (D.N.M. 2014) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). In making this decision, the Court "should balance the discovering party's interests in full disclosure against the reasonable protection of the disclosing party from . . . injury." *Bank of the W. v. Whitney*, No. 2:15-CV-00622, 2018 WL 1568756, at *4 (D. Utah Mar. 29, 2018). The Court's discretion "'is circumscribed by a long-established legal tradition' which values public access to court proceedings." *Tidwell v. Brennan*, No. 1:14-CV-553, 2015 WL 4092771, at *2 (S.D. Ohio July 6, 2015) (quoting *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996)).

Although a Rule 26(b) decision is necessarily case-specific, courts have listed various factors they may consider in deciding whether to grant a protective order, including—(1) whether the disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure will cause a party embarrassment; (4) whether the information is important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *See, e.g., Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

In this case, one of the primary issues raised by Plaintiff is the need to seal filings due to the Government's designation of the OIG Report as confidential—something that has already impacted this case. (*See also, e.g.,* ECF No. 77.[6]) As such, the Court has also

---

[6] Portions of the report were also provided to the Court and heavily cited in open court in a prior hearing seeking to compel other documents. (*See, e.g.,* ECF No. 117 at 6:10-11:16, 12:15-13:11, 32:23-33:1, 73:21-74:4

considered how the confidentiality designation affects access to court filings through future motions to seal. "Courts have long recognized a common law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). As with protective orders, the Court has discretion to seal records from the public; in so doing, the Court weighs the presumptively paramount interests of the public against the interests of the party. *United States v. Dillard*, 795 F.3d 1191, 1205 (10th Cir. 2015). The party seeking to keep documents confidential must show some significant interest that outweighs the presumption in favor of public access—and being subjected to "private spite and public scandal" alone is not enough. *Id.* at 1205-06.

## II. The OIG Report

Having heard the parties' arguments and reviewed the documents *in camera*, the Court finds that the vast majority of the OIG Report should not be protected from public disclosure in the conduct of this litigation. As such, there should be no restriction on its use in discovery, nor should it have to be filed under seal. However, the Court also recognizes that—for Defendant Jones—some of the specific disclosures may be deeply embarrassing and that there are now pending motions to dismiss this litigation, which may result in the early resolution of this matter. In these circumstances, the Court finds that some limited protection preventing the use of the documents outside this litigation may be appropriate. Finally, the Court finds that there is information in the OIG Report that relates to entirely uninvolved third parties (such as patients), as well as personal identifiers and private contact information. Such information should be redacted from the report before its public disclosure.

There are several factors that have affected the Court's decision.

### A. The Privacy Act

First, the Government's reliance on the Privacy Act for a blanket confidentiality designation and protection from public filing is unwarranted.

The Privacy Act "was enacted to protect the privacy of individuals identified in information systems maintained by Federal agencies by preventing the misuse of that information." *Andrews v. Veterans Admin. of U.S.*, 838 F.2d 418, 421-22 (10th Cir. 1988) (internal quotation marks omitted). Such records are subject to disclosure if, as happened here, such disclosure is ordered by a court of competent jurisdiction, 5 U.S.C. § 552a(b)(11), and the Privacy Act is not "a claim of privilege," *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir. 1980) (requiring only relevancy for an order to disclose). Here, Defendants have presented evidence making it clear that the VA OIG considers the OIG Report subject to the Privacy Act. (*E.g.,* ECF No. 131-1 at 3 (citing Notice of Amendment to System of Records, "Criminal Investigations—VA," Privacy Act of 1974, System of Records, 73 Fed. Reg. 46713 (Aug. 11, 2008).[7]) However, it is not clear to what extent the OIG Report—or its contents—have already been shared with others as part of the "routine use" allowed by the notice.[8] For example, the report states that VA OIG agents contacted

---

[7] This notice designates VA OIG reports of criminal investigations as a "system of records" under the Privacy Act. 73 Fed. Reg. at 46715.

[8] The notice provides for numerous ways in which disclosure of such reports may be routinely made, including to "United States Attorneys, or in a proceeding before a court, . . . when VA, its employees, or any of its components is a party to the litigation process . . . and the use of these records is deemed by VA to be relevant and necessary to the litigation or process, provided that the disclosure is compatible with the purpose for which the records were collected." 73 Fed. Reg. at 46715. The VA may also "disclose on its own initiative any information in this system . . . which is relevant to a suspected . . . violation of law . . . to a Federal, state, local, tribal, or foreign agency charged with the responsibility of investigating or prosecuting such violation, or charged with enforcing or implementing the statute, regulation, rule or order." *Id.*

Assistant United States Attorneys in Kansas "and presented the criminal violations identified in this investigation," but the District of Kansas "declined prosecution of SA JONES . . . ." (USA01546.[9])

In any event, coverage by the Privacy Act does not justify the Government's blanket assertion that a set of documents should be marked "confidential" absent a showing of good cause under Rule 26(c). *See, e.g., Tidwell*, 2015 WL 4092771, at *3 ("defendant has not shown good cause for designating *entire documents* as 'Confidential' on the sole ground the documents include personal identifying information" that may fit the definition of a record under the Privacy Act); *cf. Jordan v. Nielsen*, No. 18-CV-1680 W, 2019 WL 2209399, at *5 (S.D. Cal. May 22, 2019) (denying application to seal when movant offered "no further argument as to why the documents should be kept from the public eye, besides that 'the information and records are arguably subject to the privacy protections of the Privacy Act'"); *Matter of Pub. Def. Serv. for D.C. to Unseal Certain Recs.*, 607 F. Supp. 3d 11, 28 (D.D.C. 2022) (granting petition to unseal while noting, "the Government cannot simply rest on the 'default' protections to the Privacy Act without articulating any concrete prejudice that would arise from disclosure")

Instead, the Court will exercise its discretion under Rule 26(c) to determine whether good cause exists in this case for the protection of all or part of the OIG Report. Nevertheless, the Privacy Act is "not irrelevant" to the good cause determination, *Tidwell*, 2015 WL 4092771, at *2, and the Court takes into account that its "supervisory

---

[9] Where appropriate, the Court will cite pages from the OIG Report by bates number. The OIG Report was reviewed *in camera* and marked as USA01539-USA02398. Consistent with the analysis in this order, the Court has considered whether the information cited from these pages should be protected from public disclosure and has found that it should not.

responsibilities may in many cases be weightier" in this context, *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987).

### B.     Publicly Available Documents

The Court also rejects, out of hand, the Government's assertion that each and every page of the OIG Report must be protected from public disclosure—regardless of whether those documents, or the information in them, are already widely known or available elsewhere.  For example, the OIG Report includes copies of publicly filed court filings. (*See* USA01661-62, USA01829-32.[10])  The OIG Report also includes a transcript of grand jury testimony (USA01663-86) that the parties have stated was already produced without a protective order in the underlying Criminal Case, and which the OIG report itself notes is not protected (*see* USA01546[11]).  The OIG Report even includes copies of communications with Plaintiff Laca, himself (USA01938-51, USA02109-15, USA02124-25, USA02145-48, USA02153-54, USA02260-61) and transcripts of Laca's interviews with various agents (USA02039-83, USA02093-2104).

The Government has offered no basis for asserting that these documents must be concealed from the public, and the Court is aware of none.  Instead, under the terms of

---

[10] While the latter document is marked as "Filed Under Seal," it was since unsealed and is available on the public docket as ECF No. 2 in the Criminal Case.

[11] "Based on the public disclosures of '6E materials', AUSA Hart stated, 'disclosure concerns are no longer manifest.'  AUSA Hart advised that the USAO is no longer 'exercising control' over 6E materials regarding the investigation of Dr. Laca based on the public disclosures of these materials."  (USA01546.)

the protective order, use of such information should not be restricted.[12] (ECF No. 61 ¶ 11(a).) Counsel for the Government recognized this in her communications with opposing counsel, stating she was "willing to remove any portion of the report from the protective order produced elsewhere in discovery, but the remainder of the report is the type of document [that] should be subject to protective order." (ECF No. 99-3 at 3.) But, the Government did not correct its confidentiality designation. Worse, in its response brief, the Government concedes that "23 of the 48 exhibits attached to the OIG internal investigation report . . . are produced elsewhere in discovery and not subject to the Protective Order" and then faults Plaintiffs for not being "satisfied" with an offer to "remove the exhibits from the protection of the Protective Order"—a protective order counsel admits did not apply. (ECF No. 109 at 12.) The Court reminds the Government's counsel yet again that offers to compromise can legitimately relate to issues for which the parties have a good faith dispute. Counsel cannot, however, refuse to comply with her undisputed obligations under the rules or the Court's orders and then offer to

---

[12] In hopes of sussing out whether any of the OIG Report was publicly available, the Court raised at the hearing whether it was subject to production under the Freedom of Information Act, 5 U.S.C. § 552. Defendant Jones has since presented documentation to the Court showing that the VA OIG withheld the OIG Report when Laca made a FOIA request. (ECF Nos. 131-1 & 131-2.) Plaintiffs do not argue that this FOIA determination was incorrect. As such, FOIA does not offer the Court or the parties a shortcut around the Rule 26(c) determination.

However, at least a portion of the documents were withheld under FOIA, because the VA OIG considered them "normally privileged in the civil discovery context." (ECF No. 131-2 at 1.) To the extent any such privilege applied, the Government has now waived it by producing the OIG Report. The Government also affirmatively states it "is not claiming a qualified privilege for the OIG internal investigation report" (ECF No. 109 at 4) and that it "has not claimed the OIG internal investigation report is subject to work product or attorney client privilege (*id*. at 12). As such, to the extent any of the OIG Report was withheld under FOIA solely based on an assertion of privilege, that privilege no longer applies, and such portions of the report should also be considered publicly available and not subject to the protective order.

"compromise" by doing what she was already obligated to do. This includes counsel's obligation not to mark as "confidential" documents she knew were not, in fact, confidential. (ECF No. 61 ¶ 1(b).)

### C. Good Cause Analysis

The Court now turns to its analysis of whether—and to what extent—good cause supports protecting the OIG Report from public disclosure.

The Court starts with the public interest. Plaintiffs' allegations—if proven—would demonstrate a disturbing betrayal of the public trust. Plaintiffs allege that Laca was charged with a felony based on the false grand jury testimony of Defendant Jones. Not only did Laca endure months of criminal prosecution, he lost his job and faced other alleged harms. The OIG report vindicates and supports many of Laca's allegations, stating that (1) Jones gave materially false, fictitious, or fraudulent testimony before a federal grand jury; (2) Jones included this same materially false, fictitious, or fraudulent statement in a draft report of investigation; (3) Jones violated VA OIG policy when he provided this draft and unapproved report to the Assistant United States Attorney ("AUSA"); (4) the AUSA relied on this materially false, fictitious, or fraudulent summary of Laca's interview when indicting Laca; (5) the AUSA moved to dismiss the indictment with prejudice after Laca's defense attorney pointed out the materially false, fictitious, or fraudulent testimony; (6) the AUSA notified Jones that the case was dismissed at least in part to his materially false, fictitious, or fraudulent testimony, but Jones did not include this in his closing report of the investigation; (7) Jones failed to meet the standards established in VA OIG policy that require OIG special agents to conduct inquiries in a manner consistent with preventing injury or endangering the reputation of persons under investigation; (8) Jones did not properly prepare for the grand jury testimony or he would

13

have determined that Laca never admitted to taking Tramadol from the VA mail room; (9) Jones never sought out the results of the drug test Laca took at his initial interview; (10) Jones was solely responsible for the listed failures and conducting the investigation in a professional and impartial manner; (11) Jones was a law enforcement professional with over 20 years of experience in criminal investigations, including false statement cases; and (12) Jones attempted to minimize his actions and failed to provide answers that were consistent with the evidence in the investigation. (USA01539-40; USA01600.) The records at issue involve governmental misconduct of general public interest, and there is a public interest in ascertaining how the government disciplines its employees. *Cf. Matter of Pub. Def. Serv.*, 607 F. Supp. 3d at 25 (deciding request to unseal).

Looking at the purpose for which the information is sought, the Court finds there is a legitimate purpose here. As noted above, this report is directly related to the allegations in this case and supports those allegations. It has already been relied on by Laca in arguments before the undersigned and in filings before the district judge. It contains numerous transcribed interviews of witnesses directly on the topics at issue in this case. Apart perhaps from the names of individual patients, virtually everything in the narrative report and exhibits relates to the very core of this litigation; none of it is ancillary.

Looking at privacy interests, the Court takes into account that the OIG Report is part of a system of records protected by the Privacy Act—albeit with routine uses that may have already resulted in the disclosure of all or part of what is in the documents.

Looking at the potential for embarrassment, the Court has heard Jones's arguments that the information in this report is a blot on his lengthy law enforcement career; that Jones believes the conclusions in the report are one-sided; and that he intends

to contest them vigorously in this case. However, both in his motion and when questioned by the Court at hearing, Jones's counsel was unable to articulate "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," *Goldstone*, 301 F.R.D. at 645. The Court also notes that much of the potential damage raised by Jones has already been done by the Government's production of documents—without any confidentiality designation—that include a finding that Jones was "Giglio impaired in all investigations,"[13] a proposal of his removal from federal service for grounds that include conduct unbecoming a law enforcement officer, and Jones's arguments against such removal. (ECF Nos. 113-1, 113-4, 113-5, 113-6, 113-7, & 113-8.) These documents include many of the same details regarding the alleged falsity of Jones's grand jury testimony, that it resulted in the indictment of Laca, that Jones attempted to minimize his conduct, and that the statements in Jones's reports were factually inaccurate. (*See, e.g.,* ECF No. 113-4.) Given this information has been produced in an unrestricted fashion, it is hard to find the addition of the OIG Report as necessarily adding much to the potential damage to Jones.

Finally, the Court considers whether the information is important to public health and safety, whether sharing the information among litigants will promote fairness and efficiency, and whether the party benefitting from the order of confidentiality is a public entity or official. In their broadest sense, the documents relate to public health and safety,

---

[13] Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, a prosecutor has the duty to disclose "'evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment,'" and "the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87). In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court extended disclosure requirements to information affecting the credibility of witnesses whose reliability may be determinative of the defendant's guilt or innocence. 2 Fed. Prac. & Proc. (Wright & Miller) Crim. § 256 (4th ed.).

15

in that they relate to the diversion of medication from a VA facility, as well the other issues of public importance mentioned above. But, overall, this factor is not particularly pertinent here.

On fairness and efficiency, the Court notes that the litigants all already have copies of these documents; there is no issue of sharing among them. However, the Court does find important efficiencies in how these documents are treated in the actual conduct of this litigation. Pursuant to the protective order, before any "confidential" documents may be filed in this case, the party seeking to use them must file a motion to seal. (ECF No. 61 ¶ 2(f).) Such motion must be made at least two full business days before the date of the proposed sealed filing. (*Id.*) And, then, the Court must rule on that motion. Moreover, the "confidential" designation will not just affect the OIG Report itself. Confidential documents cannot be provided to certain persons, including witnesses, until they have executed certain agreements or consented to restrictions on the record. (*Id.* ¶ 5.) Experts and counsel must also avoid "indirect disclosure." (*Id.*) If the documents are used at a deposition, portions of that deposition transcript will also potentially become "confidential" and subject to the same restrictions. (*Id.* ¶ 2(c).) All told, and given the central nature of the information in the OIG Report, this could result in a large portion of pertinent evidence in this case being subject to repeated motions to seal and other restrictions in the use of that evidence. This factor weighs heavily in favor of <u>at least</u> removing the litigation-related restrictions from the report's use.

On whether it is private or public entities or persons who benefit, there are arguments both ways. Certainly, the designating party—the Government—is a public entity. And, during the underlying events, Jones was a public official. It appears that,

perhaps, Jones no longer has a public role—it has been represented to the Court that he at least no longer works for the VA or any other federal agency. (*See* ECF No. 29 at 5.)

Finally, the Court looks to the difference between keeping documents confidential from use outside this litigation versus their use in court filings or otherwise in the litigation. The Court recognizes there is no "public right of access to evidence obtained in the discovery process prior to use in public hearings or trial." *Grundberg v. Upjohn Co.*, 140 F.R.D. 459, 466 (D. Utah 1991); *see also, e.g., Doe v. Blue Cross Blue Shield*, 103 F. Supp. 2d 856, 857 (D. Md. 2000) (noting the common law right of public access does not attach to the raw fruits of discovery). And, the Court is cognizant of the fact that, when determining whether these documents must be filed under seal, the Tenth Circuit has already held that merely being subjected "to 'private spite and public scandal'" alone is not enough to justify sealing.[14] *Dillard*, 795 F.3d at 1206. This analysis does not supplant the Court's discussion of whether "good cause" exists for a protective order limiting use of the OIG Report, but it does inform the Court's decision on an appropriate scope of that order.

Here, the Court finds that many of the factors weigh <u>against</u> keeping the OIG Report confidential. To the extent Defendants—and particularly Jones—have shown good cause to avoid the public disclosure of the documents, this relates primarily to their use <u>outside</u> of the litigation. Inside the litigation, as detailed above, virtually all the factors weigh in favor of the unrestricted use of the documents, and no basis has been given that would justify sealing court filings containing them. In these circumstances, therefore, the

---

[14] Although the documents in *Dillard* were originally marked confidential under a Privacy Act-related protective order, the government abandoned its Privacy Act arguments on appeal. 795 F.3d at 1206.

17

Court finds that the OIG Report—after the redactions discussed below—shall be removed from the purview of the protective order and no longer subject to its terms. Instead, upon redaction, the only restriction on the OIG Report will be that it shall not be used for any purpose other than conducting the above-captioned proceeding. There will be no restriction on the parties' ability to question witnesses about the document, nor will it require filings under seal.

### D. Redactions

Notwithstanding the above discussion of the OIG Report as a whole, there are individual pieces of information that should be protected from the public and that are unlikely to be of central importance in this case. First, in compliance with LCvR 5.2-1, personal identifiers should be redacted. Second, other information in the report is ancillary and personal. This includes, for example, Jones' resume—including contact information, salary, personal references and their contact information, etc. (USA01603-07); various places where the e-mail addresses, direct telephone lines, and other contact information of persons are mentioned (*e.g.*, portions of USA01637, USA01639-41, USA01643, and so forth); and various places where the names of patients are listed, whether on photographs of their medication or otherwise (*e.g.*, portions of USA01730-37, USA01776-79). For the most part, pure redaction will provide ample protection while not destroying the useability of the OIG Report. However, to allow the OIG Report to remain useable, patient names may need to be replaced with specific identifiers; this has already been done, for example, on USA02130 and USA02144. These examples are not intended to be comprehensive but are provided to the parties in hopes of avoiding unnecessary future motion practice.

The Court finds it is appropriate to order the Government to prepare a redacted version of the OIG Report that protects such personal identifiers and contact information, and that replaces patient names with specific, unique identifiers. The parties shall confer in good faith, in person, in an effort to resolve their differences before returning to the Court to argue over redactions. The Court expects a high degree of cooperation in this process.

IT IS THEREFORE ORDERED that *Plaintiffs' Motion to Remove Report of Internal Investigation dated April 29, 2021, from Protective Order* (ECF No. 99) is GRANTED IN PART. The Government is directed to redact the OIG Report in line with the instructions above. Once redacted, the OIG Report will not be subject to the Protective Order (ECF No. 61). To the extent not already publicly available, the redacted OIG Report shall not be used by any person, other than the Government, for any purpose other than conducting the above-captioned litigation. There will be no restrictions on the parties' abilities to use the redacted OIG Report in conducting this litigation, and the redacted OIG Report need not be filed under seal.

ORDERED this 5th day of April, 2024.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT