## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MORIS LACA, individually and as parent and next friend of R. LACA and A. LACA, minor children; and SUELA TAFANI, individually and as parent and next friend of R. LACA and A. LACA, minor children,<br><br>    Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA *ex rel.* DEPARTMENT OF VETERANS AFFAIRS; and SCOTT W. JONES, Special Agent for the Department of Veterans Affairs,<br><br>    Defendants. | Case No. 22-cv-00366-SEH-SH |

## OPINION AND ORDER

Before the Court is Plaintiffs' application to recover expenses after mostly prevailing on their *Motion to Compel Discovery Responses* (ECF No. 43). Plaintiffs seek total compensation of $22,053.40. The Court finds Plaintiffs incurred $15,388.00 of reasonable expenses in making the motion and apportions $12,310.40 of those expenses to the Government.

## I.    Background

Plaintiffs filed this action on August 24, 2022, seeking recovery for the criminal investigation and prosecution of Dr. Moris Laca, as well as his termination from the Ernest Childers Veteran's Center in Tulsa, Oklahoma. (ECF No. 2.) Plaintiffs named as defendants the United States of America *ex rel.* Department of Veterans Affairs (the "Government") and Scott W. Jones, Special Agent for the Department of Veterans Affairs ("Agent Jones"). According to Plaintiffs, Agent Jones testified falsely before a federal grand jury, resulting in the indictment of Dr. Laca in *United States v. Laca*, 20-CR-86-JFH (N.D. Okla.). (*Id.* ¶¶ 19–20.) After discovery revealed information that Plaintiffs

argue was contrary to Agent Jones' testimony, the criminal charges against Dr. Laca were dismissed with prejudice. (*Id.* ¶¶ 22–25.) Nevertheless, Dr. Laca was later terminated from his employment. (*Id.* ¶ 26.) In light of these events, Plaintiffs assert various claims under the Federal Tort Claims Act and 42 U.S.C. § 1983. Plaintiffs initially served only the Government, as they were unable to locate Agent Jones. (ECF Nos. 5–7.)

### A.    The Government's Early Motion Practice

Originally, the Government moved to dismiss Plaintiffs' complaint for failure to state a claim and for lack of subject-matter jurisdiction. (ECF No. 10.) The Government did not, however, move to stay discovery. District Judge Terence C. Kern eventually converted the dismissal motion into one for summary judgment, finding it relied on disputed factual material. (ECF No. 20.) He then struck the motion and ordered it be refiled in accordance with the scheduling order. (ECF No. 25.) In the meantime, the Government answered the complaint (ECF No. 22) and, by May 2023, discovery between the Government and Plaintiffs had commenced (ECF No. 43-1).

### B.    The Original Discovery Responses & Dispute

By agreement, the Government responded to Plaintiffs' written discovery on August 10, 2023. (ECF No. 86-2 at 1–2[1]; ECF No. 93-2.[2]) The Government's responses were remarkable for their lack of substance. The Government refused to name its intended witnesses,[3] answer contention interrogatories about its affirmative defenses, or

---

[1] Page numbers refer to those in the court-provided header.

[2] As allowed by local rule, Plaintiffs set out verbatim the disputed portions of the Government's discovery responses in the body of their original motion to compel (ECF No. 43 at 12–35). *See* LCvR 37-2(d). Plaintiffs later submitted the actual discovery responses as part of a separate motion. (ECF No. 93-2.) For ease of reference, the Court will cite the latter document when referring to the Government's original discovery responses.

[3] This despite the fact that the Government's witness list had been due—and *provided*—a week earlier. (ECF Nos. 25, 107-2.)

provide other basic facts regarding Plaintiffs' claims or its defenses; asserted that providing the contact information for its co-defendant would be "an unwarranted invasion of personal privacy"; claimed ignorance as to the meaning of an "internal affairs type entity"; claimed the mere date on which Agent Jones or prosecutors learned the name of an individual to be attorney work product and information protected by the deliberative process privilege; and claimed that the name of persons who investigated Dr. Laca was similarly privileged information. (ECF No. 93-2 at 3–11.) And that was just in the Government's answers to interrogatories. As for the document requests, the Government asserted various privileges and protections in an incredibly broad matter— claiming various information was protected from disclosure by the Privacy Act, 5 U.S.C. § 552a; work product protections; and the deliberative process privilege. (ECF No. 93-2 at 12–24.) This included claiming that work product protections prevented Plaintiffs' civil counsel from seeing the very same bag shown to Dr. Laca and his criminal defense counsel in the underlying criminal case (*compare* ECF No. 93-2 at 20 *with* ECF No. 2 ¶ 23); that work product protected records and transcripts of recordings of Dr. Laca and other witness's statements (ECF No. 93-2 at 21–22); and that work product protected the results of fingerprinting (*id.* at 22–23). The Government also asserted a protective order was necessary before certain documents could be produced, but that Plaintiffs' counsel had refused to agree to one. (*Id.* at 14–15.)

As for the protective order, the Government's counsel began attempting to negotiate an agreed-to order in July 2023. (ECF No. 79-1.) However, the parties had a fundamental disagreement as to whether they should agree on the protection of specific documents, or whether they would enter into an order (common in this district) that sets

a mechanism by which a party may designate documents as confidential, which the parties could then dispute.[4]  (*See, e.g.*, ECF Nos. 79-2, 55, 55-2, 55-3.)

As for the other issues, Plaintiffs' counsel attempted—without success—to confer with the Government on the disputed discovery requests during August and early September 2023.  (ECF No. 43 at 5; ECF Nos. 43-2, 43-3, 86-4.)  This included repeated requests that the Government provide a privilege log.  (ECF No. 43-2; ECF No. 43 at 5.)

### C.    Plaintiffs' Motion to Compel

Finally, on October 9, 2023, Plaintiffs filed the at-issue motion to compel.  (ECF No. 43.)  In response, the Government stood on its various objections, including its assertion of the Privacy Act as a privilege.  (ECF No. 48.)  The Government also blamed some of its non-production on Plaintiffs' unwillingness to agree to its preferred form of protective order; yet, the Government had not before—and did not then—seek a protective order from this Court.  (*Id.* at 7.)  Further, the Government did not defend its failure to provide a privilege log, even though over two months had passed since the original discovery responses.

### D.    The First Order on the Motion

The Court then entered a partial order on Plaintiffs' motion.  First, the Court noted it was the Government's responsibility, as the party from whom discovery is sought and who wanted protection, to seek a protective order.  (ECF No. 49 at 1–2.)  The Court found that the Government could not excuse its failure to respond to discovery on this basis.  (*Id.* at 2.)  The Court therefore ordered the parties to confer again and provide the Court

---

[4] Or at least the dispute the parties eventually presented to the Court was of this nature. (ECF Nos. 55, 55-2, 55-3.)  Earlier in their correspondence, counsel for the Government stated "it would streamline the process to make all the documents in this case protected . . . ."  (ECF No. 79-2.)

their proposals for a protective order.  (*Id.*)  The parties did so, and the Court entered a protective order on November 9, 2023.  (ECF Nos. 55, 60, 61.)

Second, on the Privacy Act, the Court noted the Act is not a claim of privilege; found the Government had offered no authorities supporting its failure to seek an order allowing production of documents covered by the Privacy Act; and ordered the Government to submit an order that would allow it to provide the relevant discovery.  (ECF No. 49 at 2–3 & n.2.)  The Government subsequently provided such a submission, and the order was entered.  (ECF Nos. 55, 62.)  In its partial order, the Court ordered the Government to produce any documents withheld for confidentiality or under the Privacy Act immediately upon the entry of this order and the protective order noted above.  (ECF No. 49 at 3.)

Third, the Court ordered the Government to provide a privilege log within one week.  (ECF No. 49 at 3.)

Finally, the Court ordered the parties to provide an update as to the remaining disputed discovery requests within two weeks.  (ECF No. 49 at 4.)  The parties provided this notice on November 14, 2023.  (ECF No. 64.)  Virtually every interrogatory remained in dispute.  (*Id.* at 1–2.)  As for the requests for production, the Government produced documents it had previously withheld based on confidentiality or under the Privacy Act, but several requests remained unresolved.  (*Id.* at 2–3.)

### E.    The Privilege Log

By this point, the Government had finally provided the privilege log.  (ECF No. 64-1.)  The log included no claims of deliberative process privilege.  (*Id.*)  Instead, it contained claims of attorney-client privilege and work product protections.  (*Id.*)  These documents included numerous communications with opposing counsel in the underlying criminal case, Paul DeMuro and Nora O'Neill (*id.* at 6–8, 10); communications with court

staff or probation officers like Pam Lynn, Ashley Schneeberg, or Garrett Thomas (*id.* at 2, 7, 9); and communications with public defenders like Robert Ridenour (*id.* at 2, 4–5).

### F.      The Hearing and Second Order on the Motion

The Court then held a hearing on the remaining open issues.  (ECF Nos. 65, 117.) At the hearing, counsel for the Government took a number of positions that are directly contrary to the federal rules and basic privilege principles.  Counsel appeared to represent that it was acceptable for her client not to sign interrogatories under oath, so long as an attorney had signed the document in the regular course (ECF No. 117 at 15:8–22); that documents could be work product even if provided to adverse third parties (*id.* at 18:12–20:2); that the date Agent Jones learned the name of an individual was attorney work product even if he had not yet spoken to an attorney about his investigation (*id.* at 33:8–35:21); that the date on which information was learned by an attorney was attorney-client privileged (*id.* at 36:2–20); that <u>any</u> communication between an attorney and client is privileged, regardless of whether it was for the purpose of rendering legal advice (*id.* at 36:17–37:5); and that a transcript of an interview of Dr. Laca was attorney work product simply because it was an attorney who ordered the transcript (*id.* at 85:12–87:5).

Counsel also justified the Government's refusal to answer an interrogatory about the results of the investigation into Dr. Laca by asserting attorney-client privilege and work product protections as to two attorneys.  (*Id.* at 24:5–10.)  Counsel made this assertion despite having, two months earlier, listed those very attorneys—Vani Singhal and Melody Nelson—on the Government's witness list.  (ECF No. 107-2 at 2.[5])  For Ms. Singhal, the Government even described her anticipated testimony as regarding "Investigation . . . of case against Dr. Laca."  (ECF No. 107-2 at 2; ECF 117 at 38:13–39:7.)

---

[5] Plaintiffs' counsel provided a copy of this witness and exhibit list at the hearing.  It was later filed at ECF No. 107-2, which the Court will cite for ease of reference.

Counsel also asserted that deliberative process privilege applied to <u>any</u> information known by the investigators (ECF No. 117 at 24:11–28:18), even though the doctrine covers only "documents reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)); *see also id.* at 1227 (noting that the privilege protects only documents that are predecisional and deliberative).

Following the hearing, the Court entered a minute order memorializing its remaining rulings. (ECF No. 65.) Most of the requests by Plaintiffs were either granted or denied as moot (because the Government had provided or agreed to provide the information after the filing of the motion to compel). (*Id.* at 1–2.) Only 7 of the 28 requests were denied outright. (*Id.*) The Court further ruled that the Government had improperly failed to answer the interrogatories under oath and ruled that the Government could not withhold documents as privileged and protected for various improper reasons. (*Id.* at 2–3.)

In light of their partial success on the motion to compel, Plaintiffs now seek to recover their reasonable expenses, including attorney and paralegal fees.[6] (ECF No. 69.)

## II.   Analysis

### A.   Availability of an Expense Award under Rule 37

Where, as here, a motion to compel discovery was partially granted, the court has discretion to "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C); *see also Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2012 WL 1183073,

---

[6] The parties do not dispute the Court's authority to award this relief against the United States under Fed. R. Civ. P. 37. *See* 8B Richard L. Marcus, Federal Practice and Procedure (Wright & Miller) § 2293 & n.10 (3d ed.) (noting that after the abrogation of Rule 37(f) in 1981, "monetary sanctions are now available against the United States) (collecting cases).

at *1 (D. Kan. Apr. 9, 2012) ("when the court overrules many of the resisting party's objections, a significant number of which are not substantially justified, an award of some fees and expenses may be appropriate").  For purposes of determining the extent to which a motion was granted, the Court considers both the discovery it ordered be provided, as well as discovery that was provided by the non-moving party after the filing of the motion. *Cf.* Fed. R. Civ. P. 37(a)(5)(A).  In general, an award of expenses is not appropriate if "(i) the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action; (ii) the opposing party's . . . response[] or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

Here, the Government argues Plaintiffs should not recover the attorney fees and costs associated with bringing their motion to compel because (1) other circumstances make an award of such fees unjust; and (2) Plaintiffs filed their motion before attempting in good faith to obtain the discovery without court intervention.  (ECF No. 79 at 3–7.)  The Government does not argue its responses or objections were substantially justified.  For reasons explained below, the Court rejects these arguments and finds an apportionment of expenses to be appropriate.

### 1.    Other circumstances do not make an award unjust.

The Court must decline a request for expenses if "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(iii).  As originally enacted, this provision aimed to maintain "necessary flexibility" so that courts could find such circumstances in applicable situations, including where the prevailing party also acted

"unjustifiably." Fed. R. Civ. P. 37 advisory comm.'s note, 1970 am, subdiv. (a)(4).[7]  The Government does not argue Plaintiffs acted unjustifiably.  Instead, the Government offers a single basis for asserting that the award of expenses would be unjust—its later-filed motion to dismiss.  (ECF No. 79 at 3–4.)

As noted above, early in the case the Government moved to dismiss for failure to state a claim and lack of subject-matter jurisdiction.  (ECF No. 10.)  As part of that motion, the Government asserted that Dr. Laca was precluded by statute from bringing his employment-related claims and that, therefore, the Government was protected by sovereign immunity.  (*Id.* at 10–18.)  The Government did not, however, seek a stay of discovery.  In this district, discovery is not automatically stayed upon the filing of a motion to dismiss.  Indeed, it appears discovery commenced in this case not long after the district judge converted the motion to dismiss into one for summary judgment and then, later, struck the motion.  The Government then actively participated in discovery, responded to the motion to compel, and argued its positions at the hearing on the motion.  At no point did the Government assert that it was immune from litigation or that discovery against it should be stayed.

Instead, after the Court entered orders compelling discovery; after Plaintiffs filed their motion for expenses; and, in fact, on the very <u>day</u> its response to the motion for expenses was due—the Government filed a new motion to dismiss without leave of court.[8]

---

[7] In 1970, the rule was amended to "encourage judges to be more alert to abuses occurring in the discovery process."  *Id.*  As such, the 1970 amendments were to provide "in effect that expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court.  At the same time, a necessarily flexibility is maintained, since the court retains the power to find that other circumstances make an award of expenses unjust—as where the prevailing party also acted unjustifiably."  *Id.*

[8] A Rule 12(b) motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).  The Government filed an answer a full 8 months before filing this new motion to dismiss but did not seek leave of Court to file the motion out of time.

(ECF No. 78.)  The Government then asserted—in response to Plaintiffs' request for expenses—that in light of its newly filed motion and Defendant Jones' separate motion,

> the government would request the Court allow resolution of the Motions to Dismiss prior to ruling on the Plaintiffs' Application for Attorney Fees and Costs.  In the alternative, Defendant would request the Court consider the Application for Attorneys' Fees and Costs at the conclusion of the litigation.  Allowing an award of fees on a Motion to Compel discovery when the party may be immune from discovery would make an award of expenses unjust.

(ECF No. 79 at 4.)

The Government appears to assume that—if the Court eventually grants its motion to dismiss—it is excused from the consequences of its actions during the pendency of the litigation.  This argument reflects a fundamental misunderstanding of the effect of such a dismissal on prior discovery disputes.

> [W]hen a court lacks subject-matter jurisdiction over the substantive merits of a case, it retains the inherent authority to issue orders on matters collateral to the merits and to conduct sanction proceedings and to impose any sanction for abusive conduct for which sanctions are authorized by the federal rules of procedure or federal statutes, including awarding costs or attorney fees . . . .

*Lundahl v. Halabi*, 600 F. App'x 596, 605–06 (10th Cir. 2014) (unpublished).[9]  Such issues are even addressable after the case is no longer pending.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending"); *id.* at 396 (noting that costs, attorney's fees, contempt sanctions, and Rule 11 sanctions may be determined after the principal suit has been terminated).

---

[9] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

In any event, by failing to raise its sovereign immunity as a defense to the request for discovery or Plaintiffs' motion to compel, the Government has waived this objection.[10] *Perez v. J.P. Meyer Trucking*, No. 08-cv-02008-KLM-KMT, 2009 WL 1706697, at *1 (D. Colo. June 17, 2009) ("It is the nonmoving party's burden to show why a discovery request is objectionable. Failure to raise an objection in the response to a motion to compel is deemed a waiver of that objection.").

The Court finds that it is not unjust to award expenses when a party participated in discovery despite any claims of immunity and that the Government has waived any objections based on that immunity.

### 2. Plaintiffs attempted, in good faith, to resolve the dispute without court involvement.

The Government next argues that Plaintiffs filed their motion before attempting in good faith to obtain discovery without court involvement. (ECF No. 79 at 4–7.) This argument goes <u>only</u> to documents the Government withheld for lack of a protective order, and not the other objections that were rejected by the Court. (*Id*. at 4 ("Until the Plaintiffs filed the Motion to Compel, Counsel for the United States believed the parties were working toward an agreed protective order to allow for production of documents.").)

Even as to the protective-order issue, the Court finds Plaintiffs conferred in good faith. As noted above, the parties had diametrically opposed visions of what would be an appropriate order. In these arguments, the parties were consistent. From the beginning, the Government wanted an order allowing it to self-designate documents as confidential, while Plaintiffs wanted to reach an agreement on the specific documents that would be

---

[10] The Government raised no issues of immunity in objecting to the discovery requests, themselves. (*See* ECF No. 93-2.) Further, while in response to the motion to compel the Government raised a new argument that certain non-party witnesses had prosecutorial immunity from being sued (ECF No. 48 at 9–14), at no point did the Government raise its own sovereign immunity.

marked confidential.  In the end, the Court granted the Government's preferred form of an order.  (ECF Nos. 60–61.)  This does not, however, mean Plaintiffs failed to confer in good faith.  Instead, the record shows repeated efforts by both parties to reach an agreement.[11]

The Court further finds no record indicating the Government was lulled into believing that the parties were close to an agreement on the protective order.  Instead, the Government points to an e-mail string from July 26 to August 1, 2023, where Plaintiffs rejected a blanket protective order but said they would consider protection of specific documents, after which the Government's counsel said she was reviewing documents to determine which should be protected.  (ECF No. 79-2.)  Then, in response to the motion to compel, the Government complained that "Plaintiffs' counsel refused repeated requests for an Agreed Protective Order" and "summarily rejected" the proffered order—but also implied that, during the September meet-and-confer, Plaintiffs' counsel "agreed to consider an Agreed Protective Order, but no Order was proposed."  (ECF No. 48 at 7.)  Then, after the Court ordered the parties to confer again on a protective order, Plaintiffs' counsel stated, "For every document that truly qualifies for a protective order, I will immediately agree to that.  I've stated that from Day 1."  (ECF No. 79-3.)  The Court does not find it reasonable for the Government to believe that an agreement was in the offing, particularly given that the parties' positions barely changed from July 27 (ECF No. 79-2 at 2) to November 7, 2023 (ECF No. 55).

---

[11] While the Court agreed to a form of order that would allow the Government to self-designate documents as confidential, Plaintiffs' concerns about this approach proved to be well-founded.  The Government used the protective order to mark as confidential 860 pages of a report and attached documents, resulting in additional motion practice, after which the Court found "the vast majority of the [documents] should not be protected from public disclosure in the conduct of this litigation."  (ECF No. 137 at 8.)  This included the Government marking as confidential documents that were otherwise publicly available.  (*Id.* at 11–13.)

In any event, the protective order was only one of the many issues raised during the parties' efforts to meet and confer and in the eventual motion to compel. The Government does not challenge that Plaintiffs, on multiple occasions, communicated deficiencies in the Government's discovery responses (ECF Nos. 86-4, 86-5, 86-6), requested documents not covered by the protective order be produced in a timely fashion (ECF No. 79-2 at 2), and requested production of a privilege log (ECF No. 86-5).

The Court finds Plaintiffs attempted to resolve the parties' disputes in good faith before filing their motion to compel.

### 3.    The Court finds apportionment of expenses is appropriate.

The Court finds, in the circumstances of this case, it is appropriate to apportion Plaintiffs' reasonable expenses in making their motion to compel. As noted above, the Court granted most of the discovery sought by Plaintiffs. Further, the Government took extreme and unsupportable positions, including refusing to provide a privilege log or even verify its interrogatory responses; reading Plaintiffs' requests in a hyper-technical manner; and asserting unreasonable claims of protection or privilege. Court intervention should have been unnecessary for much of this dispute, and Plaintiffs should not have had to resort to filing a motion. As such, the Court will turn to the reasonableness of the amount requested and determine an appropriate apportionment of those expenses.

### B.    Reasonableness of Fees and Other Expenses Requested

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this loadstar amount reflects a 'reasonable' fee."[12] *Robinson v. City of*

---

[12] "The court should scrutinize the reported hours and the suggested rates [of law clerk and paralegal services] in the same manner it scrutinizes lawyer time and rates." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998).

*Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998); *see also Stenson v. Edmonds*, 86 F.4th 870, 879 (10th Cir. 2023) (stating, in Rule 37 context, "[t]he lodestar calculation produces a presumptively reasonable fee." (internal quotations omitted)). "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Robinson*, 160 F.3d at 1281. The burden of proving the reasonableness of the hours and rate is on the applicant. *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).

### 1.    Reasonableness of hours billed.

In this evaluation, the "first step in calculating the lodestar [is] determining the number of hours reasonably spent by counsel for the party seeking fees." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). Counsel for the moving party "has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* The applicant should make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Malloy*, 73 F.3d at 1018 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In its review of a fee request, a court must ensure that attorneys use "billing judgment" by "winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250.

The Tenth Circuit has noted a number of factors to consider when "determin[ing] the reasonableness of the number of hours expended in litigation," including

> (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers.

*Stenson*, 86 F.4th at 879 (internal quotations omitted).  The court's assessment of the reasonableness of hours spent on a litigation activity, however, does not have to be an hour-by-hour evaluation.  "Because mandating that the district court identify hours reasonably expended by billing entry or litigation activity would, in many cases, be practically impossible, there is no requirement that district courts identify and justify each disallowed hour."  *Case*, 157 F.3d at 1250 (internal quotations and alterations omitted).  "Nor is there any requirement that district courts announce what hours are permitted for each legal task."  *Id.*

### a)      The Government's objections.

In its response to Plaintiffs' fee application, the Government argues "a review of Plaintiffs' counsel's billing shows it is not reasonable."  (ECF No. 79 at 7.)  Particularly, it argues the billing statements show counsel is requesting recovery for specific tasks that were not necessary in making the motion to compel.  (*Id.* at 7–8.)

### b)      Expenses incurred in making the motion.

When a party successfully brings a motion to compel under Rule 37, the court must "require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses <u>incurred in making the motion</u> . . . ."  Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).  The rule uses similar language in referring to the expenses to be apportioned for a partially successful motion.  *See* Fed. R. Civ. P. 37(a)(5)(C) ("reasonable expenses for the motion").  This language has been interpreted differently by different courts, with the central question being what activities are involved in making the motion to compel or other discovery motion.  *See L.H.H. ex rel. Hernandez v. Horton*, No. 2:13-CV-452-PRC, 2015 WL 1057466, at *5 (N.D. Ind. Mar. 10, 2015) ("There is some inherent ambiguity in the phrase 'making the motion' . . . since neither the phrase itself,

nor the Rule generally, says much about what tasks are part of making a motion and which, though ancillary and related, are not.").[13]

Most courts have recognized the limiting nature of Rule 37's language and require some nexus between the activity billed and the ultimate filing of the motion. *See, e.g.*, *Kodiak Cakes, LLC v. JRM Nutrasciences, LLC*, No. 2:20-cv-00581-DBB-JCB, 2021 WL 1171706, at *2 (D. Utah Mar. 29, 2021) ("to the extent the time expended included document review, it is well established that time spent reviewing discovery submitted under a document exchange is not compensable under Rule 37(a)"). Where courts tend to vary in their interpretations is in how restrictively they read Rule 37's requirement that the activity be involved "in making the motion."

Some courts have reduced hours requested based on a narrow interpretation of Rule 37(a). *See Miller v. NEP Grp., Inc.*, No. 15-CV-9701-JAR, 2016 WL 7336408, at *3 (D. Kan. Dec. 19, 2016) ("Plaintiff's counsel included extensive time on briefing and time spent on activities that would have been performed even if no motion to compel was necessary, such as reviewing deposition transcripts."); *Brown v. City of Glendale*, No. CV-18-01267-PHX-DWL, 2019 WL 3412585, at *3–4 (D. Ariz. July 29, 2019) (agreeing the court should "reduce any assessment to reflect [only] Defendants' reasonable attorneys' fees and costs in drafting and filing the motion and any reply in support, reviewing Plaintiff's response to the motion, and preparing for and attending the" hearing, and rejecting "time spent reviewing deficient discovery responses and meeting-and-conferring with opposing counsel"); *Mouzin Bros. Farms, LLC v. Dowdy*, No. 7:20-CV-197 (TQL), 2023 WL 123209, at *4 (M.D. Ga. Jan. 6, 2023) ("Plaintiff has failed to

---

[13] "Here, context and usage suggest that the language refers to more than just the work done in putting together and filing the actual motion.  Reading [Rule 37] otherwise would exclude, not only fee petitions, but also a moving party's reply brief, which, after all, would be written *after* the motion was made." *Id.*

demonstrate that fees incurred in reviewing discovery responses, preparing Plaintiff's good faith certification, participating in discussions regarding 'discovery disputes', and addressing Defendants' Moton for Protective Order should reasonably be included in the hours incurred in making the motion to compel."); *Bland v. Booth*, No. 7:19-CV-63-BO, 2020 WL 13700683, at *2 (E.D.N.C. Mar. 23, 2020) (time spent "in an effort to resolve the dispute . . . without court intervention . . . is not properly compensable because such efforts are a prerequisite to filing a motion to compel and therefore lie outside its scope"); *Holmes v. Gen. Dynamics Ordnance & Tactical Sys., Inc.*, No. 1:18CV00019, 2019 WL 5704291, at *6 (W.D. Va. June 17, 2019) ("Rule 37 does not allow parties to recover every cost associated with discovery review, some of which, in this case, would have been incurred regardless of the plaintiff's noncompliance").

Others, however, have landed on a broader understanding of the tasks required in bringing a motion under Rule 37. *See, e.g.*, *H.S. Field Servs., Inc. v. CEP Mid-Continent, LLC*, No. 12-CV-531-GKF-PJC, 2015 WL 1954462, at *3 (N.D. Okla. Apr. 29, 2015) ("Although Rule 37 indicates that the attorneys' fees and expenses that may be awarded are those incurred in either making or opposing the motion to compel . . . the Rule should not be so narrowly read.");[14] *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 10694095, at *2 (N.D. Okla. Aug. 7, 2009) (awarding fees for, among other things, an attorney's review of data produced by the plaintiffs); *Swapalease, Inc. v. Sublease Exchange.com, Inc.*, No. 1:07-CV-45, 2009 WL 1119591, at *3–4 (S.D. Ohio Apr. 27, 2009) (rejecting the plaintiff's "strict interpretation of Rule 37(a)(5)(A)" because "ex-

---

[14] *But see Leisure Hosp., Inc. v. Hunt Properties, Inc.*, No. 09-CV-272-GKF-PJC, 2010 WL 3522444, at *2 (N.D. Okla. Sept. 8, 2010) ("Generally, the fees and expenses awarded under Rule 37(a)(5) are limited to those incurred either in making or opposing the motion to compel.").

hausting extrajudicial efforts to obtain the discovery . . . is a necessary first step" in making the motion).

### c) Assessment of reasonable hours billed.

In this case, the Court declines to adopt an overly strict interpretation of Rule 37(a) that limits recoverable expenses to only those incurred in drafting, filing, or attending hearings regarding the motion.  But the Court agrees that fees should not be charged to the Government if they would have been incurred regardless of the discovery dispute.  As such, fees requested for the review of discovery (including the privilege log) will be disallowed.  Additionally, the Court finds that time billed for initial research into privilege doctrines and confidentiality issues raised by the Government—though perhaps useful in the eventual motion to compel—would have been an ordinary part of the initial review of discovery.[15]  Mr. Lyons' hours have thus been reduced accordingly.  This also results in a reduction in the hours of paralegal Michelle Jones, as much of her fees constitute work reviewing and indexing documents produced by the Government.[16]  (*See* ECF No. 69-2.)

The Court, however, rejects the Government's assertion that the portion of the September 6, 2023, meet-and-confer spent discussing the Government's refusal to provide Defendant Jones' contact information has "nothing to do with the Motion to Compel ultimately filed in this case." (ECF No. 79 at 8.)  At the time, the Government was still refusing to answer an interrogatory that requested this information.  (ECF No. 93-2 at 8.)  Between that date and the filing of the motion to compel, Plaintiffs managed to

---

[15] Time spent complying with this Court's October 31st discovery order (ECF No. 49), however—issued as a result of Plaintiffs' motion to compel—is reasonable and recoverable.

[16] The Court also finds it unreasonable for Plaintiffs to recover fees for Ms. Jones sending deficiency letters to the Government's counsel <u>after</u> the motion to compel was filed, or for any biller's work on discovery issues after the hearing.  (ECF No. 69-2 at 2.)

locate and serve Agent Jones.  (ECF No. 37.)  There is no basis to deduct a few minutes from the required meet-and-confer call to account for the legitimate discussion of an issue that was later resolved, apparently without the Government ever complying with its discovery obligations.

The Government also briefly argues that certain hours are not reasonable because they contain duplicative billing and are "laced with work actually done by others."  (ECF No. 79 at 8–9.)  The Court agrees that fees should not be redundant or unnecessary.  *See Malloy*, 73 F.3d at 1018.  However, it appears that Plaintiffs are only seeking the fees for Mr. Lyons' work in reviewing his paralegal's drafts or for his own drafting.  (ECF No. 69-2 at 2.)  There are no entries showing charges for the paralegal's work in drafting the motion to compel.  Charging for only one billing person's time is not duplicative.  The Court does, however, find it unnecessary to charge for both Mr. Lyons and Ms. Jones' attendance at the September 6th meet-and-confer.  (*Id.* at 1–2.)  As such, Ms. Jones' hours for this conference will not factor into the lodestar calculation.

The Government also argues that the Court should strike time Plaintiffs' counsel spent drafting an unfiled response to a motion for extension of time.  (ECF No. 79 at 8.)  Normally, the Court would not consider such fees as reasonable.  *See Arnold v. Navika Cap. Grp., LLC*, No. 14-CV-378-GKF-FHM, 2017 WL 11479415, at *3 (N.D. Okla. Jan. 30, 2017) (requests for fees from drafting motions not filed "should not be assessed against Defendants").  However, the circumstances in this case do not make that time ill-spent.  Plaintiffs filed their motion to compel on October 9, 2023.  (ECF No. 43.)  Pursuant to LCvR 37-2(e), the Government's response was due on October 23, 2023.  However, October 23rd came and went without the Government filing a response.  On October 25th, the Court entered an order to show cause, giving the Government an opportunity to explain why Plaintiffs' motion should not be deemed confessed.  (ECF No. 44.)  The

Government immediately filed an opposed motion for leave to file its response out of time. (ECF No. 45.)  Despite knowledge of the objection and without awaiting Plaintiffs' response, the Court granted the Government's motion the next day.  (ECF No. 47.)  In these circumstances, and particularly given the potential for their motion being deemed confessed, it was reasonable for Plaintiffs to expend time drafting a response to the Government's extension request and reasonable that the response was not filed after the Court ruled so quickly.

As such, the reasonable number of hours billed by Plaintiffs' counsel, Mark Lyons, is 37.7 hours (including 16.96 hours for drafting the motion to compel and reply, 2.67 hours for the hearing, and numerous other hours for meet-and-confers and work required by the Court's interim order).  The Court further finds that 3.1 hours for Michelle Jones in preparing the motion to exceed page limitations and the fee application is reasonable.[17] These hours comport with the amount of time found reasonable in other cases.  *See Howard v. Segway, Inc.*, No. 11-CV-688-GKF-PJC, 2013 WL 869955, at *8 (N.D. Okla. Mar. 7, 2013) (finding reasonable 23 hours for motion and reply and 37.7 hours total). This is particularly true given the Government's intransigence and the extensive nature of the dispute between the parties, covering most of the written discovery sought by Plaintiffs with wide-ranging arguments as to multiple legal issues.

### 2. Reasonableness of hourly billing rates.

Having established the reasonable number of hours billed under the lodestar

---

[17] While the Government does not challenge hours spent seeking attorney fees, the Court notes that Plaintiffs are well within their right to request them. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986) ("An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application"); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986) (noting that courts generally allow recovery of fees for attorneys' work in seeking attorney fees in the § 1983 context).

method, the Court next assesses whether the hourly rates charged by Plaintiffs' attorney and paralegal were reasonable.  Here, the Government does not challenge the reasonableness of counsel's hourly rates.  (*See generally* ECF No. 79.)  Still, the Court will consider whether Mr. Lyons' and Ms. Jones' rates were reasonable under the particular circumstances of the case, and in light of the evidence submitted.[18]

"To determine what constitutes a reasonable rate, the district court considers the 'prevailing market rate in the relevant community.'"  *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (quoting *Malloy*, 73 F.3d at 1018).  The party requesting attorney fees "must provide evidence of the prevailing market rate for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community." *Id.* at 1224–25 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  "In making these determinations, the court may refer to 'affidavits submitted by the parties and other reliable evidence of local market rates . . . .'"  *Busby v. City of Tulsa*, No. 11-CV-447-JED-JFJ, 2018 WL 7286180, at *3 (N.D. Okla. Oct. 23, 2018) (quoting *Case*, 157 F.3d at 1256). "Courts may also consider their own knowledge of market rates."  *SFF-TIR, LLC v. Stephenson*, 452 F. Supp. 3d 1058, 1160 (N.D. Okla. 2020) (citing *Lippoldt*); *see also Case*, 157 F.3d at 1257 (noting that this is limited to situations where the court "does not

---

[18] To the extent Plaintiffs argue the Court must accept their proffered hourly rates as reasonable when not contested by an opposing party (ECF No. 86 at 1), the Court rejects this argument.  Courts must independently determine whether rates are reasonable under the lodestar test, whether contested or not.  *See, e.g.*, *H.S. Field Servs.*, 2015 WL 1954462, at *8–9 (examining uncontested rates to determine if they comport with the prevailing market rate in the community); *Howard*, 2013 WL 869955, at *7 (finding hourly rate reasonable despite it not being challenged); *Munoz v. FCA US LLC*, No. CV 17-881 WJ/SCY, 2020 WL 6126454, at *2 (D.N.M. Feb. 28, 2020) ("even though Plaintiff does not challenge Ms. Larson's requested hourly rate . . ., the Court will independently consider whether that rate is reasonable"); *see also Malloy*, 73 F.3d at 1018 (noting the burden on the applicant to show the claimed rate is reasonable).

have before it adequate evidence of prevailing market rates").[19] "The court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest that the litigation advances." *Stephenson*, 452 F. Supp. 3d at 1160.[20]

First, considering Mr. Lyons' requested rate of $400 per hour, the Court notes that the only evidence submitted by the requesting parties regarding whether this fee is in line with the prevailing market rate is Plaintiffs' counsel's own affidavit. (*See* 69-1.) Therein, Mr. Lyons notes that the "fee charged in this case is commensurate with that of other attorneys in the area" and highlights that he has been a practicing attorney for over 40 years. (*Id.* at 1–2.) Because Plaintiffs submit no other evidence to demonstrate the prevailing local market rate, the Court will consider how other courts have treated similar fee requests in this district and utilize its own understanding of the customary rates charged in the Tulsa area.

---

[19] *See Schneider v. CitiMortgage, Inc.*, No. 13-4094-SAC, 2018 WL 3068172, at *4 (D. Kan. June 21, 2018) (when the defendants "have not challenged the hourly rates sought" and "no evidence of prevailing market rates has been provided by either side . . ., the court relies upon its own knowledge" to determine whether the rates are reasonable).

[20] In addition to the above considerations, some courts have reviewed the various factors set out in Rule 1.5(a) of the Model Rules of Professional Conduct adopted in their state. *See Miller v. NEP Grp., Inc.*, No. 15-CV-9701-JAR, 2016 WL 7336408, at *2 (D. Kan. Dec. 19, 2016). Factors to be considered in determining the reasonableness of an attorney's fees under Oklahoma's rules include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *See* Okla. Rules of Prof. Conduct, Rule 1.5, 5 O.S.A. Ch. 1, App. 3-A. These factors, while broader than the consideration of prevailing market rates in the relevant community mandated by the Tenth Circuit, have been substantially addressed in Plaintiff's counsel's affidavit to his application for fees. (ECF No. 69-1.)

The Court finds an hourly rate of $400 to be reasonable in this community in 2023 for an attorney of Mr. Lyons' skill, experience (44 years in practice), and reputation. Numerous courts in this district have upheld similar fees for attorneys with substantial experience. *See, e.g.*, S*tephenson*, 452 F. Supp. 3d at 1097 (hourly rate of $425 for attorney in 2020); *Busby*, 2018 WL 7286180, at *3 (hourly rate of $400 for attorney with over 40 years of experience in 2018); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *2 (N.D. Okla. Aug. 26, 2019) (hourly rate of $350 for attorney with 19–21 years of practice in 2017–2019); *see also Bishop v. Smith*, 112 F. Supp. 3d 1231, 1252 (N.D. Okla. 2015) (finding $400 hourly rate to be a reasonable and "accurate reflection of what clients would pay for" the attorney's services). The Court does not, however, find that a premium of $50 per hour is appropriate for Mr. Lyons' court appearance. While there may be circumstances where a premium is warranted for the specialized skills needed, arguing a motion to compel is not one of them. *Cf. In re Ray*, 283 B.R. 70, 80 (Bankr. N.D. Okla. 2002) (finding no basis to differentiate between office and court time in the case before it).

The Court further finds a $95 rate to be reasonable in this community for a paralegal like Ms. Jones, who has 27 years of experience. (ECF No. 69 at 11.) Again, the only evidence the Court has is Plaintiffs' affidavit. (ECF No. 69-1.) Again, the Government does not challenge this rate. And, here, the rate is within—if not below—the range in the community based on the Court's experience. This is further supported by the findings of other jurists in the district. *See, e.g., Stephenson*, 452 F. Supp. 3d at 1196-97 (hourly rates between $108 and $140 in 2020); *H.S. Field Servs.*, 2015 WL 1954462, at *10 (hourly rate of $160–$165 in 2015); *Weiser*, 2019 WL 6723563, at *3 (hourly rate of $165 for certified paralegal with nearly 40 years of experience). *But see Arnold*, 2017 WL

11479415, at \*7 (reducing hourly rate from $100 to $70 where "no information about the education or experience of the paralegals was submitted").

Combining the reasonable hours with the reasonable rates results in a reasonable fee of $15,080.00 for Mr. Lyons and $288.50 for Ms. Jones.[21]

### 3. Reasonableness of the costs billed.

Finally, Plaintiffs seek $19.50 for the cost of a notebook of documents presented at the hearing on the motion to compel. The Government does not object to this cost. The Court finds the cost to be reasonable, particularly given the many references made to the notebook during the hearing and its helpfulness to the Court.

Combining the reasonable fees and costs results in a total of $15,388.00 in reasonable expenses incurred in making the motion.

### C. Apportionment of the Reasonable Expenses

Finally, the Court must decide an appropriate apportionment of the expenses. As noted above, Plaintiffs were more than substantially successful in their motion. Still, Plaintiffs were not fully successful, losing on 7 of the 28 requests (25%). The Court, however, does not find a straight percentage reduction is appropriate when considering the relatively greater amount of time consumed by the requests granted, along with the additional issues raised with the Government's spurious claims of privilege. The Court, therefore, finds that a 20% reduction is appropriate, and allocates 80% of the reasonable expenses to the Government—or, $12,310.40. The Court declines Plaintiffs' request to enhance the lodestar award. (ECF No. 86 at 11.)

---

[21] Ms. Jones' fee does not translate directly to $95 per hour, because one of her entries (0.3 hours on 10/5/23) was only charged to the client at $75.

**Conclusion**

IT IS THEREFORE ORDERED that *Plaintiffs' Application for Attorney Fees and Costs* (ECF No. 69) is GRANTED IN PART and DENIED IN PART.  Plaintiffs are awarded $12,310.40 in reasonable expenses to be paid by Defendant United States of America *ex rel.* Department of Veterans Affairs within 30 days of this order.

ORDERED this 16th day of September, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT