IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MORIS LACA, individually and as parent and next friend of R. LACA and A. LACA, minor children; and SUELA TAFANI, individually and as parent and next friend of R. LACA and A. LACA, minor children,<br><br>　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA *ex rel.* DEPARTMENT OF VETERANS AFFAIRS; and SCOTT W. JONES, Special Agent for the Department of Veterans Affairs,<br><br>　　　Defendants. | Case No. 22-cv-00366-SEH-SH |

**OPINION AND ORDER**

Before the Court is Plaintiffs' motion seeking sanctions against the Government for its refusal to obey a prior order compelling discovery. For the reasons explained below, Plaintiffs' motion will be granted in part and denied in part.

**I.    Background**

Plaintiffs filed this action on August 24, 2022, seeking recovery for the criminal investigation and prosecution of Dr. Moris Laca, as well as his termination from the Ernest Childers Veteran's Center in Tulsa, Oklahoma. (ECF No. 2.) Plaintiffs named as defendants the United States of America *ex rel.* Department of Veterans Affairs (the "Government") and Scott W. Jones, Special Agent for the Department of Veterans Affairs ("Agent Jones"). According to Plaintiffs, Agent Jones testified falsely before a federal grand jury, resulting in the indictment of Dr. Laca in *United States v. Laca*, 20-CR-86-JFH (N.D. Okla.). (*Id.* ¶¶ 19–20.) After discovery revealed information that Plaintiffs

argue was contrary to Agent Jones' testimony, the criminal charges against Dr. Laca were dismissed with prejudice. (*Id.* ¶¶ 22–25.) Indeed, in the criminal case, the United States moved for such dismissal, stating: "Based on additional investigation, the government has determined the case lacks prosecutorial merit." (ECF No. 41, Case No. 20-CR-86-JFH.) Nevertheless, Dr. Laca was later terminated from his employment. (ECF No. 2 ¶ 26.) In light of these events, Plaintiffs assert various claims under the Federal Tort Claims Act and 42 U.S.C. § 1983.

### A. The Order Compelling Discovery

The current motion for sanctions relates to the Government's supplemental responses to written discovery following a hearing on an earlier motion to compel. Much of this history is covered in greater detail in the Court's order apportioning expenses from that motion practice. (*See* ECF 160.)

In brief, Plaintiffs served the Government discovery requests on May 11, 2023. (ECF No. 43-1 at 15.[1]) The Government responded on August 10, 2023. (ECF No. 93-2.) Plaintiffs filed their *Motion to Compel Discovery Responses from the Defendant, United States of America* after determining the responses were deficient. (ECF No. 43.) The Court then issued an initial order granting some preliminary relief, directed the parties to jointly submit an update as to items still in dispute, and held a hearing on the remaining issues. (ECF Nos. 49, 117.) Following the hearing, the Court entered a minute order memorializing its rulings. (ECF No. 65.) The Court ordered the Government to supplement its discovery responses by December 7, 2023. (*Id.* at 3.)

---

[1] Citations to page numbers refer to the page number in the court-provided header.

2

B.     **Plaintiffs' Motion for Sanctions**

Plaintiffs now move for sanctions, arguing the Government's supplementation was insufficient and in violation of the Court's order. (ECF No. 93.) Specifically, Plaintiffs argue the Government's supplemental responses to Interrogatory Nos. 2–3, 7, and 9 were improper. (*Id.* at 5–9.) The parties also brief alleged deficiencies in the Government's supplemental response to Request for Production No. 24. (ECF No. 100 at 14–16; ECF No. 102 at 7–8.) Plaintiffs ask the Court to sanction the Government pursuant to Rule 37(b)(2) and its inherent authority. Plaintiffs request the Court grant judgment for liability against the government and preclude it from calling certain witnesses at trial. (ECF No. 93 at 16–26.)

The Court declines to issue these particular sanctions. The undersigned does, however, award monetary sanctions for the Government's continued refusal to answer certain requests and will require it to supplement answers to the interrogatories discussed below.

II.    **Analysis**

A.     **Rule 37 and the Court's Inherent Power**

1.     **Rule 37**

If a party "fails to obey an order to provide or permit discovery," the Court may issue "further just orders." Fed. R. Civ. P. 37(b)(2)(A). These may include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," as well as "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(ii) & (vi). In addition to sanctions under Rule 37(b)(2), if "a party fails to provide information or identify a witness as

3

required by Rule 26(a) or (e),² the party is not allowed to use that information or witness to supply evidence" in motions, hearings, or at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court may also order the disobeying party and/or its attorney "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The sanctions available under Rule 37 are not limited to those listed in the statute, but are "flexible, selective, and plural." 8B Richard L. Marcus, Fed. Prac. & Proc. (Wright & Miller) § 2284 (3d ed.). The Court "may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even." *Id.* Still, the Court's discretion is limited "in that the chosen sanction must be both just and related to the particular claim which was at issue in the order to provide discovery." *The Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)).

Rule 37 allows "a court to enter a default judgment when a party disobeys a court order." *Derma Pen, LLC v. 4EverYoung Ltd.*, 736 F. App'x 741, 745 (10th Cir. 2018) (unpublished).³ But this is an "extreme sanction" that is "appropriate only in cases of willful misconduct." *Id.* (quoting *Ehrenhaus*, 965 F.2d at 920). As such, it is considered a weapon of last resort. *Ehrenhaus*, 965 F.2d at 920 ("In many cases, a lesser sanction will deter the errant party from further misconduct."). Before dismissing a case as a

---

² Among other things, a party who has responded to a discovery request must supplement its response as ordered by the court pursuant to Fed. R. Civ. P. 26(e)(1)(B).

³ Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

sanction (or granting an equivalent default judgment), the Court should evaluate the so-called *Ehrenhaus* factors on the record. *Ellis-Hall Consultants, LLC v. Hofmann*, No. 20-4040, 2022 WL 3972093, at *4 (10th Cir. Sept. 1, 2022) (unpublished); *see also Derma Pen*, 736 F. App'x at 745–46 (default judgment). These include: (1) the degree of actual prejudice to the movant; (2) the amount of interference with the judicial process; (3) culpability of the litigant; (4) whether the court warned the litigant in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Ehrenhaus*, 965 F.2d at 921 (internal quotations and citations omitted). The factors are not a rigid test but are criteria for the Court to consider. *Id.* They are not exhaustive or necessarily given equal weight. *Procter & Gamble*, 427 F.3d at 738. This last-resort sanction is only appropriate when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits. *Ehrenhaus*, 965 F.2d at 921.

### 2. The Court's Inherent Power

In addition to Rule 37, the Court has the inherent power to manage its own affairs to achieve the orderly and expeditious disposition of cases. *Stenson v. Edmonds*, 86 F.4th 870, 875–76 (10th Cir. 2023). "This power includes the authority to 'fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* at 876 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)); *see also Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) (a court has inherent authority to impose sanctions for "abuse of the judicial process, or, in other words, for bad faith conduct in litigation" (internal quotations omitted)). "District Courts within the Tenth Circuit have held that a party acts in bad faith when actions taken during the litigation are entirely without color and have been asserted wantonly, for purposes of harassment or delay or

5

for other improper reasons." *In re Homeadvisor, Inc. Litig.*, No. 16-CV-01849-PAB-KLM, 2023 WL 196414, at *27 (D. Colo. Jan. 16, 2023) (internal quotations and alterations omitted).

### B. Was the Court's Order Violated?

Before the Court can decide if sanctions are appropriate, the Court must first determine whether the Government violated its order compelling discovery. The Court will look at each of the supplemental responses raised by the parties—Interrogatory Nos. 2–3, 7, and 9 and Request for Production No. 24.

#### 1. Interrogatory No. 2

Interrogatory No. 2 asked the Government to provide the names, addresses, phone numbers, and contact information for all persons involved in the investigation of the crimes for which Dr. Laca was charged in 20-CR-86-JFH; the role they were assigned in the investigation; and the results of their investigation. (ECF No. 93-2 at 4.) The Government asserted general objections as to breadth and privacy, but responded with a list of names. Alongside the names, the Government either wrote "as per report" (the only other detail provided) or asserted "attorney work product and deliberative privilege." (*Id.* at 4–5.)

In their motion to compel, the entirety of Plaintiffs' argument regarding this interrogatory was that "privileges cannot shield the discovery of facts and [the Government] was required to fully and completely answer the question above." (ECF No. 43 at 13.) Further, Plaintiffs maintained "that the deliberative process privilege does not apply." (ECF No. 43 at 13.) The discussion at the hearing similarly focused on privilege, although the Government also raised its objection to breadth (which the Court overruled). (ECF No. 117 at 21:22–28:18.) There was no discussion of the Government's reference to

6

"as per report" in answering the interrogatory. The Court granted the motion to compel Interrogatory No. 2, subject to a limited claim of deliberative process privilege. (*Id.* at 28:13–17.)

The Government then supplemented its interrogatory response. (ECF No. 93-1 at 5–6.) For most of the individuals listed—for whom the Government had previously claimed privilege—the privilege objection was removed and a cross-reference was made to "report(s)" or "recorded interviews." (*Id.*) One new individual was added—a VA lieutenant. (*Id.* at 6.) Two individuals were removed—Vani Singhal and Melody Nelson, both Assistant U.S. Attorneys ("AUSAs"). (*Id.* at 5–6.)

In their motion for sanctions, Plaintiffs raise two alleged points of error: (1) the fact that the supplemental responses merely state "as per report" for ten people without describing their investigative role or the results of their investigation; and (2) the Government's improper removal of Singhal and Nelson from its answers. (ECF No. 93 at 5–6.)

### a)   The Named Individuals' Roles & Results

While the Court would find the Government's "per report" responses to be insufficient under Rule 33, it did not violate the Court's order in this regard. The Government relies on Rule 33(d) to justify its reference to the reports in lieu of answering the interrogatory. (ECF No. 100 at 6–7, 16–17.) Pursuant to that rule,

> If the answer to an interrogatory may be determined by examining . . . a party's business records . . ., and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by . . . specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.

7

Fed. R. Civ. P. 33(d)(1).  However, a "party who is permitted by the terms of this subdivision to offer records for inspection in lieu of answering an interrogatory should offer them in a manner [that] permits the same direct and economical access that is available to the party." Fed. R. Civ. P. 33, advisory ctte.'s note, 1980 am., subdiv. (c). "[A] responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." *Id.* (emphasis added).

In addition to specifying the category and location of the records, courts have found additional requirements for use of Rule 33(d):  (1) "the responding party must affirm that the information sought by the interrogatory in fact is available in the specified records"; (2) "the responding party [must] be able to demonstrate that answering the interrogatory in the traditional manner would impose a burden on it"; and (3) "the burden of compiling the information [must] be substantially the same for the inquiring and the responding parties." 8B Wright & Miller § 2178 (3d ed.).  The Government has met none of these prerequisites, and its response is deficient.

It is not reasonable, however, to find the Government's deficient answer to be a violation of the Court's order, when the Court's order was directed to claims of privilege—not the sufficiency of the pre-existing use of Rule 33(d).

### b)   The Removal of Singhal and Nelson

The Court, however, does find the Government violated its order by removing AUSAs Singhal and Nelson from its supplemental answer.  The issues raised by Plaintiffs' motion to compel as to Interrogatory No. 2, and the discussions at the hearing on that interrogatory, specifically referenced the inclusion of Ms. Singhal and Nelson on the Government's list as persons involved in the investigation of Dr. Laca, as well as the Government's claim of privilege for the results of their investigation.  (*See, e.g.*, ECF No.

8

54 at 6–7; ECF No. 117 at 23:4–12.)  At no point did the Government assert—as it did <u>after</u> the Court's order to compel—that "[t]heir names were withdrawn as participating in the investigation precisely because they were not and are not investigators," or that Plaintiffs are asking it to "create information which does not exist."  (ECF No. 100 at 7.)  Indeed, such a position would have been wholly inconsistent with the Government's position to that point, which included listing both AUSAs as witnesses—Vani Singhal for the "[i]nvestigation and dismissal of case against Dr. Laca" and Melody Nelson for her "[k]nowledge of allegations in the Complaint."  (ECF No. 107-2 at 2.)  Additionally, it is completely contrary to the Government's statements at the hearing:

> THE COURT:  All right.  Ms. Parrilli, what is your response on the . . . unwillingness to provide the results of the investigation for – conducted by all of these people?
>
> MS. PARRILLI:  . . . well some of them are attorneys, Your Honor, to the extent that their investigation is work product or attorney-client privilege, I object on that basis.

(ECF No. 117 at 24:5–10.)  It is also inconsistent with the Government's approach to other discovery responses, even after supplementation, where Vani Singhal acted as the government witness who verified certain interrogatory answers—including those relating to factual details of the investigation and the "information which is the 'additional investigation' that the case against Dr. Laca 'lacks prosecutorial merit,'" as stated in the United States' motion to dismiss the criminal case.  (ECF No. 112 at 14–17, 44.)

To the extent the Government wanted to argue that such AUSAs were not part of any "investigation" due to their role as "prosecutors," it should have raised this in response to the original interrogatories or in response to the motion to compel.  *Cf*. Fed. R. Civ. P. 33(b)(4) (the "grounds for objecting to an interrogatory must be stated with specificity" and any ground not timely stated is waived); *Perez v. J.P. Meyer Trucking*,

9

No. CIVA 08-cv-02008-KLM-KMT, 2009 WL 1706697, at *1 (D. Colo. June 17, 2009) ("Failure to raise an objection in the response to a motion to compel is deemed a waiver of that objection.").

In no event may a party bypass the Court's order compelling a discovery response by reinterpreting the request in such a way as to exclude the very evidence the Court ordered be provided. Because this is exactly what the Government attempted to do here, it violated the Court's order compelling a response to Interrogatory No. 2.

### 2.     Interrogatory No. 3

Interrogatory No. 3 asked the Government to "identify every person you intend on calling as a witness at the trial in this matter." (ECF No. 93-2 at 6.) The Government originally refused to answer the interrogatory to the extent it sought "to contradict or alter the Court's Scheduling Order"—but promised to provide the information as it became available. (*Id.*) Bafflingly, one week before making this objection, the Government had already provided its preliminary witness list, which included 10 named witnesses and three general categories of additional witnesses. (ECF No. 107-2.) At the hearing on Plaintiffs' motion to compel, the Court overruled the Government's objections to this interrogatory and ordered the Government supplement its response to provide the information requested, including topics of testimony. (ECF No. 117 at 28:22–30:13.)

> The Government then supplemented its response as follows:
>
> Plaintiffs carry the burden of proof and may not sustain the burden in making a case in chief at trial. Defendant may call Scott Jones. Defendant anticipates Jones will testify regarding his investigation and grand jury testimony. Jones is available for contact through his counsel. Defendant reserves the right to call additional witnesses, based on the case in chief presented by Plaintiffs at trial.

(ECF No. 93-1 at 7.) The Government simultaneously amended its preliminary witness list to remove everyone other than Plaintiffs and Scott Jones. (ECF No. 107-3 at 1–2.)

The Court again has concerns that the Government may have engaged in another post-order reinterpretation of the interrogatory at issue. The Government now argues that "[t]o conclusively state which witnesses the United States intends to call at trial at this early stage of the litigation is premature at best and would be presumptive and reckless at worse." (ECF No. 100 at 9.) Yet, this interrogatory—which is exceedingly common in civil litigation—does no more than ask the Government's current intentions.

The Court further finds it disingenuous for the Government to assert, as it appears to in its answer, that it cannot know who all its witnesses will be until halfway through trial. Even without Plaintiffs' discovery request, the federal rules anticipate that—within a matter of weeks of appearing in a case—a party will be able to list the name, contact information, and subjects of information held by persons the disclosing party may use to support its claims or defenses (unless the use would be solely for impeachment). Fed. R. Civ. P. 26(a)(1)(A)(i). Similarly, at least 30 days before trial, the rules anticipate that a party can provide the name and contact information of witnesses "it may call if the need arises." Fed. R. Civ. P. 26(a)(3)(A)(i). In this case, District Judge Terence C. Kern required the parties to provide preliminary witness lists back in August 2023—at which time the Government was able to make the determination it now claims is reckless. (ECF No. 25.)

Despite the mealy-mouthed nature of its supplemental interrogatory answer, the Government may sincerely intend to call only one witness at trial. While the Court understands Plaintiffs' suspicions as to this sincerity, the Court need not assume a direct and intentional violation of its order. Instead, the Court finds and orders that the

11

Government may not call any witnesses at trial not listed in response to Interrogatory No. 3, as appropriately supplemented in a "timely manner" as required by Rule 26(e)(1)(A). The Court further cautions the Government that <u>any</u> such supplementation will be deemed untimely and improper unless the Government provides a specific, articulable basis on which one may reasonably find that the Government's decision as to "who else may be called at trial" (ECF No. 100) has recently and legitimately changed.[4]

### 3. Interrogatory No. 7

Interrogatory Number 7 requested the Government "provide the first date the S.A. Scott Jones and the prosecutors handling Dr. Laca's case knew the name of the patient that Dr. Laca was accused of stealing from as alleged in Count I of the indictment alleged in *United States of America v. Moris Laca*, 20-CR-86-JFH." (ECF No. 93-2 at 8.) In the Government's original response, it refused to answer, objecting that the interrogatory requested irrelevant information that was privileged. (*Id.* at 9.) The parties' briefing on the motion to compel focused on the issue of privilege, as well. (ECF No. 43 at 15; ECF No. 48 at 20; ECF No. 54 at 7–8.) At the hearing, Plaintiffs' counsel explained the relevance of this request. (ECF No. 117 at 31:24–33:13.) In particular, Plaintiffs' counsel pointed to excerpts of the OIG report referencing patient Crockett as being the person whose medications were stolen, and a September 6, 2020, meeting where the evidence bag was opened and it was discovered that Crockett's mail was still sealed. (*Id.*) The

---

[4] There is no basis for the Government's assertion in its response that "within 30 days" of its witness decision is "timely" for supplementation purposes (ECF No. 100 at 10), and the Government should not assume that 30 days is presumptively reasonable. However, discovery in this case is currently stayed (ECF No. 158), and any supplementation obligations will not arise unless and until that stay is lifted.

Court then overruled the Government's privilege objections and ordered the Government to answer the interrogatory. (*Id.* at 33:15–37:11.)

Despite this order, when the Government supplemented its answer, it again refused to provide the information. Now, the Government claims "there is no specific patient identified as the victim that Dr. Laca was accused of stealing from as alleged in Count I of the indictment . . . ." (ECF No. 93-1 at 15.) The Government further makes the rather confusing statement that Dr. Laca knew the (supposedly unknowable) name of the patient in August of 2020—notwithstanding the fact that the interrogatory is asking for the date on which Agent Jones and the prosecutors learned the name. (*Id.*)

At no point during the original discovery dispute did the Government assert that the interrogatory was unanswerable, and the Government has waived any such objections. *See Servpro Intell. Prop., Inc. v. Blanton*, No. 3:18-CV-121-RGJ-CHL, 2020 WL 13548024, *6 (W.D. Ky. Feb. 24, 2020) ("Defendants do not get a second bite at the apple to assert new objections and new arguments three months after the ruling"). Moreover, the Government's current arguments are specious and directly contradicted by the record. First, in their response, the Government asserts that Plaintiffs never told them they were asking about the identity of the person mentioned in Agent Jones' grand jury testimony (on which the indictment was based) and whose paperwork was found in the trash. (ECF No. 100 at 12.) This is directly contrary to the exchange at the motion to compel hearing, where this is exactly who was discussed. (ECF No. 117 at 32:23–33:13.) Second, it is unbelievable that the Government would charge a person with a felony for stealing "mail located in the mail room at the Tulsa VA clinic, articles and things contained in a package addressed to a clinic patient, to wit, medication known as Tramadol, a Schedule IV controlled substance, prescribed for a clinic's patient" (ECF No. 2, Case No. 20-cr-86-

13

JFH), without there being a "clinic patient" who had a package addressed to them containing tramadol. It is also beyond belief that the Government did not understand Agent Jones' testimony before the grand jury was relevant to the indictment that the grand jury issued. *See* Fed. R. Civ. P. 37, advisory ctte.'s note, 1993 am., subdiv. (a) ("Interrogatories and requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions").

As such, the Government has violated the Court's order as to Interrogatory No. 7.

### 4. Interrogatory No. 9

In Interrogatory No. 9, Plaintiffs asked the Government to "[d]escribe in detail all information which is the 'additional investigation' that the case against Dr. Laca 'lacks prosecutorial merit', and the dates it was obtained, as referenced in the Government's Motion to Dismiss With Prejudice" filed in the criminal case. (ECF No. 93-2 at 9.) In its original response, the Government asserted work product protections and the deliberative process privilege. (*Id.* at 9–10.) At the hearing, the Court overruled the objection and ordered supplementation. (ECF No. 117 at 38:13–39:21.)

The Government then answered this interrogatory, stating "The Prosecutor was provided the audio recording of the January 31, 2020, interview of Dr. Laca at the evidence inspection on or about September 9, 2020, that recording was reviewed days before the Motion to Dismiss was filed. Agent Jones is separately represented and may advise regarding his investigation." (ECF No. 93-1 at 16–17.)

Plaintiffs complain that the Government did not provide the name of the "Prosecutor" and fault the refusal to provide information regarding Agent Jones'

14

investigation.[5] (ECF No. 93 at 8.) Plaintiffs also argue that the Government is hiding information, pointing to a compilation their counsel made from information provided by the Government. (ECF No. 93 at 9; ECF No. 93-4.)

The Court finds the Government partially complied with its order—at least as to the information actually provided regarding the prosecutor's "additional investigation." Of course, if Plaintiffs later show through discovery that the Government has deliberately withheld additional, responsive information, they may make an appropriate motion at that time. As of now, all the Court has is conjecture.

However, the Court finds the Government defied the Court's order by excluding Agent Jones' investigation. At the hearing, the Government tried to use Jones' separate representation as an excuse for it not to answer discovery requests directed to it, and the Court rejected this argument—noting that "if the V.A. knows" information, "then the V.A. can provide that information." (ECF No. 117 at 35:10–19.) If the Government has information about any additional investigation that led to the finding that the criminal charges against Dr. Laca lacked prosecutorial merit, it was obligated to provide that information in response to this interrogatory. It was not allowed to exclude information it knew relating to its co-defendant.

The Government did not fully comply with the Court's order as to Interrogatory No. 9.

### 5. Document Request No. 24

While Plaintiffs do not raise Document Request No. 24 in the body of their motion

---

[5] In reference to this interrogatory, Plaintiffs also argue that "the Government is required to represent Jones in this case," even though he has retained his own counsel. (ECF No. 93 at 11, 22.) The Court gives this unsupported argument no weight.

15

for sanctions, both parties spend time arguing about this request in their briefing. (*See* ECF No. 93 at 9 n.3; ECF No. 100 at 14–15; ECF No. 102 at 7–8.

Document Request No. 24 asked the Government to "provide the results of finger-printing of evidence seized in the case filed against Dr. Laca." (ECF No. 93-2 at 22.) In its original response, the Government refused to provide this evidence, claiming it was somehow "attorney work product." (*Id.* at 23.) However, during the meet-and-confer, the Government clarified that "there were no result[s] from the fingerprinting of Dr. Laca." (ECF No. 48 at 28.) At the hearing, after a discussion as to whether there might be other fingerprint evidence, the Court granted the motion to compel and ordered the Government to provide any fingerprint evidence or clarify there was none. (ECF No. 117 at 90:12–91:20.) In its supplemental response, the Government clarified that, "Fingerprint evidence was taken from the bags, but there were no 'results' of fingerprint evidence." (ECF No. 93-1 at 32.)

Arguing that a failure to test fingerprint evidence is a "result" of fingerprinting, Plaintiffs seek sanctions. (ECF No. 102 at 7.) The Government disagrees and notes that, in any event, it has already produced all of the documents relating to the untested fingerprint evidence. (ECF No. 100 at 14–15.)

The Court finds that the Government has complied with its order to compel a response to Document Request No. 24.

### C. An Appropriate Sanction

Although the Court does not credit the entirety of Plaintiffs' motion, it has found that the Government repeatedly violated the Court's order compelling discovery. The undersigned now considers what would be a further just order under Rule 37(b)(2)(A).

16

### 1. Default Judgment and the *Ehrenhaus* Factors

As a preliminary matter, the Court finds this case does not warrant the extreme sanctions Plaintiffs seek, including default judgment. The *Ehrenhaus* factors do not support such a last-resort sanction at this time.

First, as to actual prejudice to Plaintiffs, this factor weighs against default judgment. In this context, prejudice exists when the failure to make discovery impairs the opponent's ability to determine the factual merits of the claims. *See Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 559 (8th Cir. 1992). Further, "increased costs and delays are valid reasons to find actual prejudice." *Ellis-Hall Consultants*, 2022 WL 3972093, at *4. But at the time the motion for sanctions was filed, there were four months remaining of discovery (ECF No. 85), and even those deadlines were later stricken (ECF No. 105), and discovery has now been stayed (ECF No. 158). Any prejudice to Plaintiffs can be corrected by further discovery (if the stay is lifted) and an award of costs incurred in pursuing straight answers from the Government. Similarly, while the Government's conduct has not been appropriate, the Court cannot say that there has been such misconduct, mounted over such a prolonged time, that default judgment would be warranted. *See Mooney v. Regalado*, No. 19-CV-00462-TCK-SH, 2023 WL 2981466, at *2 (N.D. Okla. Mar. 3, 2023) (collecting cases).

Second, as for interference with the judicial process, this factor weighs in favor of a sanction. *See Ellis-Hall Consultants*, 2022 WL 3972093, at *5 ("We have held that causing a district court to expend unnecessary resources can establish interference with the judicial process."). But, this interference has not yet arisen to the level of disruption found in other cases. *See, e.g.*, *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007) (where plaintiff engaged in extensive dilatory conduct

regarding the designation/deposition of a Rule 30(b)(6) representative, requiring court intervention and depriving defendants the opportunity to depose a key witness); *Lopez v. Bernalillo Cnty. Sheriff's Dep't*, No. CV-02-277 JP/DJS, 2003 WL 27385141, at *1–3 (D.N.M. June 19, 2003) (plaintiff "obstructed the judicial process" by thwarting all efforts at "basic discovery" and "failing to comply with . . . multiple [court] orders"); *Kirby v. O'Dens*, No. 14-CV-388-GKF-PJC, 2015 WL 5918083, at *10–20 (N.D. Okla. Oct. 9, 2015) (plaintiff engaged in "willful obstruction of discovery" through "inane, disruptive, and sophomoric behavior," requiring the court consider 24 discovery motions, conduct "two lengthy discovery hearings," and preside over plaintiff's depositions at the courthouse).

Third, as to the Government's culpability, this is a mixed bag.  For the most part, however, the Court finds the Government has offered increasingly unjustifiable answers for its behavior rather than accepting the Court's rulings.

Fourth, as to prior warnings, this factor does not weight in favor of default.  The Court has not previously warned the Government this would be a likely sanction either explicitly or constructively.

Fifth, the efficacy of lesser sanctions weighs against default.  The Court can order the Government (again) to fully answer the requests at issue if the discovery stay is lifted and, in the meantime, order the Government to compensate Plaintiffs for the expenses they have incurred due to its intransigence.

Because the Court finds that lesser sanctions are available and appropriate, the Court finds no reason to exercise its inherent authority to punish any "bad faith."

### 2. Sanctions Granted

The Court orders the Government to pay Plaintiffs' reasonable expenses, including

attorney fees, caused by the Government's failure to properly comply with the Court's order on Plaintiffs' motion to compel as set forth above. *See* Fed. R. Civ. P. 37(b)(2)(C). The Court does not find the Government's noncompliance to be substantially justified. *Id.*

Plaintiffs' counsel may submit a motion for expenses by October 14, 2024, outlining the reasonable amounts incurred as a result of the Government's failure to properly respond to Interrogatory Nos. 2, 7, and 9. The Government will have an opportunity to oppose the motion.

The Court further orders that, immediately upon any lifting of the stay of discovery, the Government shall fully answer those interrogatories or face future sanctions, which may include—if appropriate—default judgment.

## Conclusion

IT IS THEREFORE ORDERED that *Plaintiffs' Motion for Sanctions Against the Defendant, United States of America, for its Refusal to Comply with this Court's Order Granting Motion to Compel* (ECF No. 93) is GRANTED IN PART and DENIED IN PART.

ORDERED this 16th day of September, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT